**EWING et al. v. PEAK et al.**

Court of Appeals of Kentucky.

Jan. 29, 1954.

Rehearing Denied April 23, 1954.

John M. Berry, D. K. Floyd, New Castle, Bernard B. Davis, Shelbyville, for appellants.

J. L. Donaldson, Carrollton, for appellees.

STEWART, Justice.

By this suit in equity appellants seek a permanent injunction to prevent consolidation of the two high schools of Trimble County, namely, the one at Milton, located in the northern section of the county, with that at Bedford, the county seat. This litigation grew out of certain facts which we shall now disclose.

Pursuant to a request of the board of education of Trimble County, herein referred to as the board, the fiscal court of that county provided for an election therein to take the sense of the voters on the question of levying a special additional tax for the erection and equipping of school buildings and for certain other purposes that we need not mention. This tax is authorized by KRS 160.477. The election was held on June 14, 1952, and a majority of the electorate voted in favor of a special levy of not less than five nor more than thirty-five cents on each one hundred dollars of property subject to local taxation.

However, on June 7, 1952, a week before the holding of election, both the board and the fiscal court officially adopted and proclaimed identical resolutions, whereby those public agencies undertook to acquaint the voters with the proposal they were asked to decide, and in each of which resolutions this pertinent language was employed:

"Now Therefore, Be it resolved that it is contemplated and planned by this board that the money derived from, or produced by, said special school building tax, if approved by the people of Trimble County, will first be used for the purpose of acquiring a site for, and the constructing and equipping, a school building at Milton, Kentucky, adequate to accommodate the pupil population in said locality in the grades 1 to 12 inclusive; and also for the other general purposes and needs of the schools of Trimble County as specified in the notice aforesaid."

Upon passage of the special levy, bonds were issued in the sum of $190,000. Of this sum all but $10,000 has been or is being expended in constructing the new building at Milton. Subsequent to the above-mentioned events and at the general election of November, 1952, trustees, J. W. Peak, Jr., William A. Pearce and William Baker, were elected to membership on the board, the latter succeeding trustee, Kenneth Burkhardt. Thereafter, the board requested that the State Department of Education make a detailed critical study of the educational system of Trimble County and report back the best possible program to be followed by it in the future. Upon completing this study, the Department recommended, among other things, that there be only one high school in the county, because of the inability of the county to adequately support two such institutions, and the board, on January 10, 1953, acting on this advice, adopted a resolution to consolidate the high school at Milton with that at Bedford. It was also determined that additional elementary students would be transferred to the new school then being constructed at Milton.

On April 10, 1953, an action was filed in the Trimble Circuit Court by appellants to enjoin the board from consolidating the two high schools. A temporary restraining order was issued which was later dissolved. Not until September 14, 1953, was this action finally resolved by the Chancellor. At that time a general demur-

rer to appellants' petition as finally amended was sustained and this appeal was granted.

Appellants' first contention embodies what we deem to be the only issue raised in this case, which is that the representation contained in the official pre-election resolutions, set out above, constitutes an enforcible covenant with the public and, since the special tax levy was carried on the faith that such a covenant would be kept, the board is without moral or legal authority to abandon the promise set forth therein; that is to say, construct and equip a twelve-grade school at Milton and then abolish the high school and establish and operate only an eight-grade school at the latter location. It is argued that the failure to maintain the high school at Milton is a substantial departure from the voted plan and an illegal diversion of the special tax funds. We think a reference to the law applicable to this election and an explanation as to how the money raised thereby has been expended will reveal the fallacy of this argument.

KRS 160.477(1) (a) provides that the income derived from a special levy of the kind voted here " * * * shall be used for the purchase or lease of school sites and buildings, for the erection and complete equipping of new school buildings, for the major alteration, enlargement and complete equipping of existing buildings, * * * and for the purpose of financing any program for the acquisition, improvements, or building of schools. * * *" Even a casual reading of the statute involved in this controversy will convince one that the funds to be created by the additional tax must be solely employed in capital outlay, that is, in providing and equipping school structures. Moreover, it is readily apparent that not one penny of these funds may be spent for operational or maintenance purposes in connection with any school building. Hence, to have contracted to use the funds derived from the bond issue for the operation and maintenance of a high school at Milton or elsewhere would have violated the express

provisions of the enabling statute pursuant to the terms of which this particular tax may be imposed. More than that, to have pledged the funds in the manner just mentioned would have resulted in running afoul of Section 180 of the Constitution of Kentucky which "specifically prohibits the use of any tax for a purpose other than that for which it was levied."

Actually, there has been a literal compliance with the requirement of the resolutions. As we read the language contained in them we note that appellees agreed only to "build and equip a school building at Milton adequate to accommodate the pupil population in said locality in the grades 1 to 12 inclusive." This has been done, and we might add that practically all the money that was raised by the special bond issue has been expended for this purpose. Since these facts are undisputed, it can scarcely be argued that there has been a diversion of the voted money. Nor do the words carry with them the promise that the new building will necessarily be used as a high school as well as an elementary school; for, no board, as we shall presently show, has the power to limit its legislative discretion by a contract. With an eye to the future, and having in mind an expanding and changing population, the new school building at Milton has been so designed and constructed that in event of a substantial increase of school pupils in that area and a sufficient increase in school revenue, it could be utilized as a high school.

It is a well-settled principle of law, both in this state and elsewhere, that a school board cannot by contract divest itself or its successors of the discretionary powers granted to it by the Legislature. This rule is well-stated in 62 C.J.S., Municipal Corporations, § 139, p. 281, in these words: "A municipal corporation may, by contract, curtail its right to exercise functions of a business or proprietary nature, but, in the absence of express authority from the legislature, such a corporation cannot surrender or contract away its governmental functions and powers, and any attempt to barter or surrender them is invalid." See Board of Education of Louisville v. Society of Alumni of Louisville Male High School, Ky., 239 S.W.2d 931. A contract of the nature appellants contend they are entitled to have enforced would contravene the principle of law just stated because it is clear such an obligation, if it had been undertaken, would have deprived the board of the power to discharge the duties which the law imposes upon it.

We conclude for the reasons indicated that the Chancellor properly sustained the demurrer and dismissed the petition.

Wherefore, the judgment is affirmed.